UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANKDIRECT CAPITAL FINANCE, LLC,<br>        Plaintiff,<br><br>v.<br><br>CAPITAL PREMIUM FINANCING, INC.,<br>        Defendant.<br><br>CAPITAL PREMIUM FINANCING, INC.,<br>        Counter-Plaintiff,<br>v.<br><br>BANKDIRECT CAPITAL FINANCE, LLC,<br>BANKDIRECT CAPITAL FINANCE, and<br>TEXAS CAPITAL BANK NATIONAL ASSOCIATION,<br>        Counter-Defendants. | Case No. 15-CV-10340<br><br>Judge Joan B. Gottschall |

## MEMORANDUM AND ORDER

BankDirect Capital Finance, LLC ("BankDirect") filed this suit for breach of contract against Capital Premium Financing, Inc. ("CPFI"). CPFI answered and asserted six counterclaims seeking, among other things, rescission of an option BankDirect holds to purchase assets held by CPFI under a predetermined pricing structure. Counter-defendants BankDirect and Texas Capital Bank, NA ("TCB") move for summary judgment dismissing the counterclaims against them. They argue that CPFI's contract counterclaims must fail as a matter of law under the contract doctrines of waiver and election of remedies.

1

# I. BACKGROUND[1]

BankDirect and CPFI are, and were at all relevant times, in the commercial insurance premium finance business. They "originat[e] and service[e] loans for the financing of commercial property insurance premiums." BankDirect SOF ¶ 22, ECF No. 43.

In 2010, BankDirect and CPFI entered into a series of agreements they collectively refer to as "the Transaction Facility." BankDirect SOF ¶ 25. The Transaction Facility consists chiefly of a Master Transaction Agreement ("MTA"), an option agreement, a promissory note, a participation agreement, and a loan purchase and sale agreement. (*Id.*; *see also* BankDirect Ex. A–E, ECF Nos. 40-1 thru 40-5 (copies of these documents).) CPFI characterizes these agreements, which together span 667 pages, as "a complicated set of inter-related agreements." Ans. & Countercl. at 67 ¶ 33, ECF No. 45.[2] Among many other things, the Transaction Facility provided:

> (i) that BankDirect would be the exclusive purchaser of certain eligible insurance premium finance loans originated by CPFI, as determined by a related Loan Purchase, Sale and Servicing Agreement (Exh. A, p. 49, ¶ 35); (ii) that BankDirect funds or reimburses CPFI for the principal premium amount of the underlying commercial insurance policy being financed (Exh. A, p. 49, ¶ 36(b)); and (iii) that the Option Agreement granted BankDirect an option to purchase CPFI's assets approximately five years from the execution of the MTA pursuant to the terms of the Option Agreement, the MTA and Asset Purchase Agreement,

---

[1] Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. L.R. 56.1(a)(3)). Under Local Rule 56.1(b)(3), the nonmoving party then must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). The party opposing summary judgment may also present a separate statement of additional facts "consisting of short numbered paragraphs," with citations to the record, that require the denial of summary judgment. N.D. Ill. L.R. 56.1 (b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). For summary judgment purposes, Local Rule 56.1(a) requires the court to "deem admitted those facts that are not contested in the parties' submissions related to the motion for summary judgment." *Robinson v. Bandy*, 524 F. App'x 302, 305 (7th Cir. 2013) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006)). The court recites the facts in the light most favorable to CPFI.

[2] After this point, citations to "Countercl." refer to the separately numbered paragraphs of CPFI's counterclaims beginning on page sixty-two of its answer. ECF No. 45 at 62.

> which was attached as Exhibit A to the MTA. (Exh. A, p. 52, ¶ 47);
> and (iv) that the Option Agreement provided BankDirect with the
> option to purchase CPFI's assets in approximately five (5) years
> from the execution of the MTA based on a predetermined
> "earnings based formula." (Exh. A, p. 52, ¶¶ 47-48; *see also*,
> Exhs. 3 and 4 to Exh. A).

BankDirect SOF ¶ 27.

The option gave BankDirect the right to elect on January 30, 2016, to purchase certain assets (CPFI disputes exactly which ones) from CPFI at a predetermined price of 5.25 times earnings before taxes. *See* BankDirect's Ans. to CPFI Counter SOF ¶ 5, ECF No. 60; Option Agreement § 2.02, ECF No. 44-3. The option agreement requires CPFI to complete the sale within thirty days of BankDirect exercising its option. BankDirect SOF ¶ 28; Option Agreement § 4.01. On January 30, 2016, BankDirect advised CPFI that it would exercise its rights under the option agreement, but CPFI has refused to perform.

In a five-count amended complaint, BankDirect seeks declaratory and injunctive relief requiring CPFI to complete the sale under the option agreement and monetary damages for breaching the MTA and option agreement. CPFI pleads six counterclaims in its answer. It asks the court to rescind the option agreement, award concomitant declaratory relief, and enter a judgment for money damages.

The parties group the breaches alleged in CPFI's counterclaims into three broad categories. The first concerns BankDirect's obligations to negotiate a marketing agreement within ninety days following the transaction facility's effective date. *See* MTA § 3.06(a). CPFI alleges that BankDirect violated the MTA and the marketing agreement (BankDirect reserves the right to dispute that a marketing agreement was reached) by, among other things, refusing to count sales of CPFI loans toward the quotas of BankDirect sales personnel and thereby destroying any incentive they had to sell CPFI loans. *See* Countercl. ¶ 14.

The second arises under § 3.06(c) of the MTA. CPFI alleges that BankDirect breached the MTA when it purchased Standard Premium Funding, a company CPFI views as a direct competitor, in June 2011. After the purchase:

> BankDirect began marketing its own products for the small to mid-market insurance agency market segment throughout the United States, including in the Eastern United States and ceased implementing the Marketing Collaboration Agreement with CPFI. BankDirect failed to market or promote CPFI's products in the United States. In doing so, BankDirect deprived CPFI of an expected sales force that would market CPFI's loan products and services to small and mid-sized insurance agencies in the Eastern United States (among other regions as well).

Countercl. ¶ 91.

CPFI bases its third alleged breach on an agreement dated July 20, 2011, to modify partially the transaction facility ("the acknowledgment agreement"). ECF No. 44-5. Under that agreement, which was part of a larger reorganization, BankDirect switched the division that purchased CPFI loans to BankDirect Capital Finance ("BDFC").[3] *See* ECF No. 44-5 § 2; *see also* Countercl.¶¶ 93–97. As a result of the reorganization (but not as a formal requirement of the acknowledgment agreement), CPFI's loans began to be "required . . . [to] comply with stricter loan criteria, including the collection of certain specific customer information and the performance of additional administrative processes." Countercl. ¶ 99. Those requirements allegedly harmed CPFI because many insurance agencies prefer lenders who do not require this additional information. *See id.* ¶¶ 100–02.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] This party, according to BankDirect's counsel, is properly identified as Texas Capital Bank National Association. It has been named as a counter-defendant, though it was not named as a party plaintiff.

4

56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to, and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party–but only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

When the motion for summary judgment was filed, little or no discovery had occurred.[4] CPFI draws the court's attention to that fact at least three times in its response to BankDirect's motion for summary judgment. (*See* ECF No. 55-1 at 7, 14, 15 n.7.) In footnote seven, CPFI asserts that BankDirect's motion "is effectively a motion to dismiss" because it has been filed before discovery has occurred and assumes the truth of the facts alleged in CPFI's counterclaims. (*Id.* at 15 n.7.)

Federal Rule of Civil Procedure 56 specifies when a motion for summary judgment can be filed: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). As the Seventh Circuit has stated, "[d]istrict courts may mitigate the expense of litigation by resolving motions for summary judgment early in the case—in advance of discovery, if appropriate, for summary judgment may be sought at any time." *S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*, 274 F.3d 1168, 1171 (7th Cir. 2001) (citing Fed. R. Civ. P. 56); *accord Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994) (the "fact that discovery is not complete—indeed, has not begun—need not defeat the motion. A defendant may move for summary judgment at any time." (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986))). Under Rule 56(d), a party who needs more discovery can defer consideration of a motion for summary judgment by filing an appropriate affidavit or declaration. *See* Fed. R. Civ. P. 56(d) (allowing court to defer consideration of a summary judgment motion, deny it, or issue any other appropriate order "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). CPFI has

---

[4] The docket sheet reflects that discovery has continued to proceed before the magistrate judge to whom this case is referred. *See, e.g.*, Minute Entry, Feb. 7, 2017, ECF No. 71 (setting Aug. 29, 2017, as deadline to complete fact discovery).

not filed a declaration or affidavit complying with Rule 56(d). Ordinary summary judgment principles therefore apply to BankDirect's motion.

### III. ANALYSIS

Under New York law, which the parties agree applies under the applicable choice-of-law clauses,[5] waiver of contractual rights and the election of remedies for a breach "are not synonymous." *Lockheed Martin Transp. Sec. Solutions v. MTA Capital Constr. Co.*, 09 Civ. 4077 (PGG), 09 Civ. 6033 (PGG), 2014 WL 12560686, at *20 (S.D.N.Y. Sept. 16, 2014); *see also Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 239 (S.D.N.Y. 2006); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 388–89 (S.D.N.Y. 1999). "Waiver is the intentional relinquishment of a known right and should not be lightly presumed." *Lockheed Martin*, 2014 WL 12560686, at *22 (quoting *Random Ventures, Inc. v. Advanced Armament Corp.*, 12 Civ. 6792 (KBF), 2014 WL 113745, at *38 (S.D.N.Y. Jan. 13, 2014)). Thus, a waiver analysis necessarily precedes consideration of the election of remedies doctrine because "if a party waives her right to performance under a contract, then she has no remedies to elect because she has waived her ability to enforce the relevant provision" of the contract. *ESPN*, 76 F. Supp. 2d at 390. Thus, the court begins with CPFI's waiver claim.

**A. Waiver**

The parties direct the court to three clauses of the MTA they claim bear on the waiver analysis. The first three fall under the heading "Miscellaneous" in Article Nine of the MTA:

> Section 9.01 <u>Amendments and Waivers</u>. This Agreement may not be amended, supplemented, modified or waived except in a written agreement executed by the parties hereto.

---
[5] *E.g.*, MTA § 9.10(a) ("THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF (other than [specified provisions of New York law])").

7

> Section 9.02 <u>Notices</u>. (a) All notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopier as follows: [respective delivery addresses]
>
> . . .
>
> Section 9.03 <u>No Waiver; Cumulative Remedies; Enforcement</u>.  No failure to exercise and no delay in exercising, on the part of any party hereto of any right, remedy, power or privilege hereunder or under any other Transaction Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein and in any other Transaction Document provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

ECF No. 44-2 at 65.  In Article VI, "Affirmative Covenants," "CPFI . . . agrees to," among other things:

> Provide written notice to BankDirect as soon as possible of (and in any event within three (3) Business Days after obtaining knowledge of):
>
> . . . .
>
> (h) any development or event that has had or could reasonably be expected to have a Material Adverse Effect.
>
> Each notice pursuant to this <u>Section 6.07</u> shall be accompanied by a statement of a Responsible Officer of CPFI setting forth details of the occurrence referred to therein and stating what action CPFI proposes to take with respect thereto.

*Id.* § 6.07(h). The MTA's definition of the term "material adverse effect" includes (somewhat circularly) "a material adverse effect on . . . (c) the validity or enforceability of this Agreement or any of the other Transaction Documents or the rights or remedies of BankDirect under any Transaction Document . . . ."  MTA at 17.

8

BankDirect reads the above sections of the MTA together as requiring CPFI to give three days' written notice complying with §§ 9.02 and 6.07 of the material breaches CPFI pleads in its counterclaims. It argues that treating the no-waiver clause of § 9.03 as covering CPFI's counterclaims would render § 6.07(h) superfluous. *See, e.g.*, *Columbus Park Corp. v. Dep't of Hous. Pres. & Dev.*, 598 N.E.2d 702, 708 (N.Y. 1992) ("[A] construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation."). Not so. Even if § 6.07(h) does not create a waiver rule, it requires, through the MTA's definition of "material adverse effect," notice of several events, unrelated to a material breach, that could have a "material adverse effect" on "the business, property, operations, condition (financial or otherwise) or prospects of CPFI and its Subsidiaries taken as a whole" and "the value of the Collateral taken as a whole." MTA at 17.

Rather, it is BankDirect's approach to waiver that effectively blots a provision out of the MTA. BankDirect suggests that § 9.03 still has some role to play by preserving a second claim for a material breach that arises at a later time even if it is similar to a prior material breach that was waived for failure to give three days' notice in accordance with § 6.07(h). Mem. Supp. Mot. Summ. J. 20, ECF No. 46-1. BankDirect does not explain why that would not be the case under § 6.07(h) if § 9.03 were stricken entirely from the MTA. *See id.*; *cf. ESPN*, 76 F. Supp. 2d at 394–95 (holding under election of remedies analysis that party lost the right to terminate contract for past performances but still had the right to terminate contract based on anticipated future material breach). Furthermore, § 6.07(h) sets a deadline without an apparent consequence for missing it. Section 6.07 therefore stands in stark contrast to the waiver clause in the primary case on which BankDirect relies—a case about a contract between a documentary film producer and a popular band: "No failure by Producer or Band to perform any of Producer's or Band's

9

respective obligations hereunder shall be deemed a breach hereof, unless Band or Producer gives the other written notice of such failure and such party fails to cure such nonperformance within forty-eight (48) hours after such party's receipt of such notice." *RBFC One, LLC v. Zeeks, Inc.*, 367 F. Supp. 2d 604, 610 (S.D.N.Y. 2005) (emphasis omitted); *see also id.* at 614–21 (finding no evidence from which a fact finder could decide that written notice complying with this clause had been sent). The MTA makes specific reference to a waiver of breach elsewhere. It forbids CPFI to "waive any default or termination event under or any breach or violation of any term or condition of any CPFI Material Agreement." MTA § 7.15(c). That is, BankDirect and CPFI knew how to refer expressly to waiver of breach, but they did not do so in § 6.07(h). Ultimately, BankDirect seeks in effect to write language comparable to § 7.15(c) into § 6.07(h) in this litigation, but to do that, CPFI and BankDirect's agreement that "[n]o failure to exercise and no delay in exercising . . . any right, remedy, power or privilege" must be read as meaning the opposite of what it says. MTA § 9.03.

In New York, no-waiver clauses "are uniformly enforced." *Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S. 2d 147, 155 (NY. App. Div. 2007) (citing *CrossLand Sav. v. Loguidice–Chatwal Real Estate Inv. Co.*, 567 N.Y.S.2d 39, 39 (N.Y. App. Div. 1991) and *Rodking Serv. Station v. Gribin*, 486 N.Y.S.2d 786, 786 (N.Y. App. Div. 1985)). Because § 9.03 can be harmonized with § 6.07 via its cross reference to the MTA's definition of "material adverse effect," Section 9.03 must be enforced as written.

BankDirect has two other theories of waiver. The first is CPFI's silence in the face of knowledge of the facts underlying the breaches on which its counterclaims are premised. Assuming arguendo that CPFI had knowledge of those claims in 2011 and 2012 (CPFI disputes this), "a waiver is 'the voluntary and intentional relinquishment of a known right, which is not

10

created by negligence, oversight, or silence.'" *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 201 (2d Cir. 2012) (quoting *Plato Gen. Constr. Corp./EMCO Tech Constr. Corp. v. Dormitory Auth. of N.Y.*, 932 N.Y.S.2d 504, 511 (N.Y. App. Div. 2011)). Add to that list "delay," which the parties agreed does not constitute waiver in § 9.03 of the MTA, and even on the facts as BankDirect wishes them to be seen, CPFI's delay does not require summary judgment on waiver.

BankDirect's final theory concerns two provisions of the MTA that concern affirmative representations CPFI allegedly made when selling loans to BankDirect. *See* MTA § 4.01(a), 5.01(q) ("There is no fact known to CPFI that could reasonably be expected to have a Material Adverse Effect that has not been expressly disclosed herein . . . ."). Under those provisions, BankDirect asserts that each loan CPFI sold to it effectively waived any breach up to that point. *See* Mem. Supp. Mot. Summ. J. 19-20. It cites no legal authority in support of that argument, however, only portions of its Local Rule 56.1 statement quoting the MTA. *See id.* "A party waives arguments that it does not present in its initial motion for summary judgment or in its response." *Anderson v. City of Wood Dale*, No. 93 C 425, 2001 WL 477158, at *4 (N.D. Ill. May 3, 2001) (citing *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1336 (7th Cir. 1992)) (other citations omitted). This court will not do BankDirect's legal research for it. *See, e.g.*, *Heft v. Moore*, 351 F.3d 278, 284 ("The failure to cite cases in support of an argument waives the issue on appeal, despite counsel's contentions at oral argument that case law is unnecessary 'window dressing.'" (citations omitted)).

**B. Election of Remedies**

"[I]t is well-settled that 'rescission is an equitable remedy'" for a breach of contract. *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y.

2000) (quoting *Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998)) (other citation omitted). When confronted with a material breach, a contract party has a choice to make under New York law: "'continu[e] the contract or . . . refus[e] to go on.' If the injured party chooses to go on it loses its right to terminate the contract because of the default." *ESPN*, 76 F. Supp. 2d at 388 (quoting *Emigrant Indus. Sav. Bank v. Willow Builders*, 48 N.E.2d 293, 299 (N.Y. 1943)) (alterations and other citation omitted). If the party does not elect rescission, it loses only that remedy, not the right to obtain money damages for the breach; election is not waiver. *Id.* at 389 ("[A]n election is not a waiver of any rights under the contract but rather a choice between two inconsistent remedies for breach of the contract." (quoting *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1014 (S.D.N.Y. 1995))); *see also Lucente v. IBM Corp.*, 310 F.3d 243, 260 (2d Cir. 2002).

Once a material breach occurs, the election doctrine allows the nonbreaching party to "wait a 'reasonable time' after learning of the alleged breach[ ] before terminating the contract." *Bigda*, 898 F. Supp. at 1012 (citing *Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313 (Ct. Cl. 1976)). "There is no specific time limit within which to make this election and generally, an election need not be made until the time comes when the party making the election must render some performance under the terms of the contract." *Lucente*, 310 F.3d at 259 (citing *Bigda*, 898 F. Supp. at 1013).

BankDirect identifies the proper contract for this analysis as the MTA or the Transaction Facility in its entirety. It argues that CPFI knew of the facts underlying its counterclaims in 2011 and 2012, according to BankDirect. By continuing to go forward under the MTA, it elected a remedy inconsistent with the rescission it seeks in its counterclaims.

CPFI counters that the MTA and the option agreement are separate contracts. Because the option agreement did not call for performance until January 31, 2016, CPFI did not wait too long when it presented its grievances to BankDirect in May 2015. The court need not determine whether the option agreement is separate from the MTA because a fact dispute exists over whether CPFI gave notice within a reasonable time for at least one of its claims.

The acknowledgment agreement includes a bargained-for clause stating that "the intent of BankDirect and CPFI is that this Agreement shall neither increase in any material respect any fee, cost, expense or other amount required to be paid by CPFI to BankDirect or to BDCF Division under the Transaction Documents . . . nor reduce in any material respect any fee, cost, expense or other amount required to be paid by BankDirect or BDCF Division to CPFI under the Transaction Documents." Acknowledgment Agreement § 2(b). As late as "2015, [BankDirect's CEO] requested that CPFI provide him with detailed information about the harm to CPFI's business as a result of the[ ] additional requirements" imposed by the acknowledgment agreement's requirement that CPFI deal with BDCF. BankDirect Resp. to Counter SOF ¶ 18. Taken together, that evidence supports the conclusion that the parties were negotiating about a possible breach by BankDirect of the acknowledgment agreement. Seen in the light most favorable to CPFI, if those negotiations failed, BankDirect's breach would be complete, and the moment to elect remedies would be at hand. *See Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 97 (2d Cir. 2015) (reversing grant of summary judgment under election of remedies doctrine because, "in light of evidence of communications from Geistlich to Luitpold raising concerns with Luitpold's marketing and sale of GEM21S, there remains a genuine dispute as to whether Geistlich provided timely notice of any breach" and fact issues existed over when breach-of-contract claim accrued); *Lockheed Martin*, 2014 WL

12560686, at *26–27 (denying summary judgment on election of remedies based on fact disputes over when performance under a contract to deliver software was complete and claim for breach accrued); *ESPN*, 76 F. Supp. 2d at 392 (holding party could seek rescission of contract after negotiations revealed that anticipatory breach claim was appropriate).

## IV. CONCLUSION

For the reasons stated above, BankDirect's motion for partial summary judgment, ECF No. 41, is denied.

Date: March 31, 2017                                  /s/
                                            Joan B. Gottschall
                                            United States District Judge