## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BANKDIRECT CAPITAL FINANCE, LLC, | ) ) ) | Case No. 1:15-cv-10340 |
| Plaintiff, | ) ) | |
| vs. | ) ) | Judge Joan B. Gottschall |
| CAPITAL PREMIUM FINANCING, INC., | ) ) ) | Magistrate Judge Jeffrey B. Cole |
| Defendant. | ) ) ) | |
| CAPITAL PREMIUM FINANCING, INC., | ) ) | |
| Counterclaim Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| BANKDIRECT CAPITAL FINANCE, LLC; BANKDIRECT CAPITAL FINANCE, a division of Texas Capital Bank National Association; and TEXAS CAPITAL BANK NATIONAL ASSOCIATION, | ) ) ) ) ) ) | |
| Counterclaim Defendants. | ) ) ) | |

**MOTION TO COMPEL ATTENDANCE OF BANKDIRECT CAPITAL FINANCE,
LLC'S CORPORATE REPRESENTATIVE AT DEPOSITION**

Almost immediately after BankDirect Capital Finance, LLC ("BankDirect") and Texas Capital Bank, N.A. ("TCB") started producing documents in this case, Capital Premium Financing, Inc. ("Capital Premium") recognized that the production did not include emails from the most critical period in this case: late 2010 and 2011. Accordingly, on May 5, 2017, Capital Premium served a deposition notice upon BankDirect seeking the testimony of BankDirect's corporate representative related to BankDirect's general document preservation and collection efforts. BankDirect finally produced a representative on July 25, 2017, and that representative revealed a

troubling reason for the absence of BankDirect's documents from the critical time period—BankDirect failed to suspend its automatic deletion of archived email until November 2016, nearly a year after filing suit in this case. Moreover, and important to this motion, there were several topics on which BankDirect's corporate representative was unprepared to testify on behalf of BankDirect, including BankDirect's specific document preservation activities such as litigation holds.

None of this is disputed. What is in dispute in this motion is when BankDirect needs to produce an additional corporate representative to testify on topics that Capital Premium noticed four months ago. Given (1) that BankDirect has tried to obscure or slow play this important discovery for four months and (2) the importance of this testimony to Capital Premium's assessment of its spoliation claim, Capital Premium brings this motion to compel the attendance of BankDirect's supplemental corporate representative at a deposition *in advance of* the parties' currently scheduled September 20, 2017 Settlement Conference with Judge Gottschall.

## BACKGROUND

In March 2017, the parties made their initial substantial productions of documents in this action. Almost immediately upon reviewing the production of BankDirect and TCB, it became apparent that BankDirect had not produced many e-mails from the key 2010-2011 timeframe (when the contracts at issue were negotiated and executed) that it should have.[1] Capital Premium immediately wrote to BankDirect's counsel, identifying several examples of such unproduced documents and seeking an explanation for why the documents had not been produced. (Ex. 1, 3/22/17 C. McGushin Ltr. to D. Strubbe.)

---

[1] BankDirect produced some versions of documents from this time period from their custodian's hardcopy records. But this did nothing to answer the question of why these e-mails were not produced in electronic form.

BankDirect provided a shocking response, stating *for the first time*, that "BankDirect emails collected date back only to November 21, 2011 because in 2011 a new email archive system was installed."[2]  (Ex. 2, 3/29/17 D. Strubbe Ltr. to C. McGushin.)  BankDirect further stated that e-mails pre-dating this alleged archive system change were "not retained on the new email archive system."  (*Id.*)  Given the obviously crucial nature of the these documents, Capital Premium followed up through additional letters and meet-and-confers, seeking information on the circumstances of the destruction of these documents, as well as an understanding of what could be done to recover the documents.  (*E.g.*, Ex. 3, 4/3/17 C. McGushin Ltr. to D. Strubbe; Ex. 4, C. McGushin 4/11/17 Ltr. to D. Strubbe.)  In response to these inquiries, BankDirect represented that the pre-November 2011 e-mails could not be recovered in any way.  (Ex. 5, 4/6/17 D. Strubbe Ltr. to C. McGushin ("The reference in my previous letter with respect to diligently working with our third-party vendor was to determine if the pre-November 2011 emails could be recovered in any way.  The answer is they cannot.").)  In an effort to efficiently reach a definitive, technical understanding of what happened to these documents, BankDirect suggested, and Capital Premium agreed, that, as a first step, BankDirect could provide a declaration from one of its employees who was knowledgeable about the topic.  (Ex. 6, 4/11/17 C. McGushin Ltr. to D. Strubbe ("We agree with your suggestion that a declaration from a BankDirect employee may be a good initial step that could help to narrow issues moving forward[.]").)  When BankDirect did not provide such a declaration for nearly a month thereafter, Capital Premium served a deposition notice.

---

[2]   Prior to the deadline for substantial production of documents in this case, Capital Premium sought an extension of that deadline as a result of the substantial difficulties that Capital Premium had encountered in collecting e-mails dating back to the initiation of the parties' relationship.  (Dkt. No. 68.)  BankDirect opposed this request, arguing that the technical issues Capital Premium encountered were not sufficient grounds to modify the schedule, and that "BankDirect is prepared to make its initial and substantial production" on the original timeline.  (Dkt. No. 72.)  Conveniently, BankDirect neglected to mention that it was not having issues collecting dating back to this early time period *because it was simply taking the position that it had no such documents anymore.*

Capital Premium served its notice for a deposition of a corporate representative of BankDirect on May 5, 2017. (Ex. 7, 5/5/17 Notice of Deposition.) The topics upon which testimony was requested covered the issues surrounding the pre-November 2011 e-mails, as well as topics related to other gaps that Capital Premium had identified in BankDirect's production. (*Id*. at Exhibit A.) The deposition was originally noticed for May 19, 2017 (*Id*. at 1); given that this deposition would cover foundational discovery questions that will impact the course of discovery moving forward, Capital Premium wished to complete the deposition quickly. BankDirect did not share the same urgency, ignoring the notice entirely until informing Capital Premium on May 16th that it would not be presenting a witness on the 19th. (Ex. 8, 5/17/17 C. McGushin Email to D. Williams, *et al.* (recounting phone conversation of previous day).)

After Capital Premium again followed up requesting a date for this deposition, BankDirect's counsel responded, stating that there was not a single representative that could cover all the topics. (Ex. 8, 5/24/17 D. Strubbe Email String to T. Knapp.) The parties thus agreed that the initial deposition would go forward on some of the topics, with both parties understanding (as early as May 2017) that a subsequent witness would be presented on the remaining topics. Despite reaching this agreement, and despite numerous follow up requests from Capital Premium (Ex. 8, 5/31/17 and 6/6/17 T. Knapp Emails to D. Strubbe), BankDirect failed to identify a witness for another *month*. It was only when Capital Premium threatened to go forward on a unilaterally noticed date that BankDirect finally responded, identifying its witness and stating that he was available the week of July 24 to 28th. (Ex. 8, 6/23/17 T. Knapp Email to D. Strubbe; 6/27/17 D. Strubbe Email to T. Knapp.) To recap, BankDirect took more than *seven weeks* to identify a witness or provide potential dates, and the offered dates were nearly *three months* after the deposition notice was served.

4

The first portion of the corporate representative deposition went forward on July 25th. BankDirect's corporate representative—Eric Fisch—was not prepared on all of the noticed topics. But, specific to the issue of the missing pre-November 2011 documents, Mr. Fisch provided shocking testimony that exposed as completely false the representations of BankDirect's counsel about the reasoning these documents were not produced. *First*, contrary to the representations from BankDirect's counsel, BankDirect's change of email archive systems occurred in the summer of 2012, *not November 2011*. (Ex. 12, 7/25/17 E. Fisch Dep. Tr. at 30:4–31:8.) *Second*, Mr. Fisch further confirmed that any emails that existed in email folders at the time of the new archive change (which, for BankDirect, actually occurred in the summer of 2012) *were* transferred onto the new archive system and maintained. (*Id*. at 57:4–12.) As BankDirect's corporate representative admitted at his deposition, the reason BankDirect did not produce pre-November 2011 emails is because it failed to suspend its automatic deletion of archived email *until November 2016*—nearly a year after BankDirect filed its complaint. (*Id*. at 61:7–62:1.) BankDirect's email archive system retains all email for only 5 years (as measured from the date of the email). As a result, at the time that BankDirect collected documents for production in this case, all emails in the archive system from prior to November 2011 had been destroyed. (*Id*. at 72:3–74:18.)

To use an example, if at the time of the email archive switch in summer 2012, a BankDirect custodian maintained a January 2011 email in his inbox or sent email folder, that January 2011 email would have been "ingested" into the new email system and preserved. Following BankDirect's five-year protocol, that email would have remained on the system until January 2016 (five years after the date of the email). Prior to January 2016, because of BankDirect's email archive system, that email *could not* have been permanently deleted. But because BankDirect did not cease the automatic deletion of records until November 2016, all emails dates prior to

5

November 2011 (five years prior to the cessation of the automatic deletion) have been permanently deleted. If BankDirect had issued a litigation hold in November 2015, when it filed its complaint, any emails in BankDirect's archive system from November 2010 through the end of 2011 would have been retained and available in this litigation.

Following Mr. Fisch's testimony, Capital Premium contacted BankDirect to find dates for the completion of the testimony on the noticed topics on which Mr. Fisch was not prepared to testify. (Ex. 9, 8/8/17 C. McGushin Ltr. to D. Strubbe.) Consistent with its prior practice, BankDirect ignored this request for more than a week, until Capital Premium again followed up. (Ex. 10, 8/18/17 C. McGushin Email to D. Strubbe.) BankDirect then identified the individual it will use as its witness—Joe Shockey—but refused to provide a date for this deposition to continue. (Ex. 11, 8/29/17 D. Strubbe Ltr. to C. McGushin.)

When the parties discussed the scheduling of this additional deposition, BankDirect stated that it would not present Mr. Shockey as its corporate representative *at all* on these topics until Mr. Shockey is deposed in his personal capacity.[3] (*Id.*)

## ARGUMENT

BankDirect does not contest that Capital Premium's deposition topics seek relevant information; the only dispute is when BankDirect should be required to produce Mr. Shockey to complete the corporate representative deposition. BankDirect's argument that this continued deposition should wait until near the end of discovery cannot stand up to even modest scrutiny or logic.

---

[3]  Attached as Exhibit 13 is a declaration of Timothy Knapp, counsel for Capital Premium, recounting the efforts to resolve this issue pursuant to L.R. 37.2.

It is well-established that, generally speaking, "methods of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(3)(A). Here, after Capital Premium identified serious deficiencies in BankDirect's production, it elected to serve its notice of deposition pursuant to Rule 30(b)(6) in order to quickly take all steps necessary to ensure it received a complete production from BankDirect. Resolving these issues and ensuring a complete production is a necessary first step before moving into subsequent discovery (such as additional written discovery and depositions). This is precisely why completing this deposition early in discovery was crucial.

BankDirect seeks to override Capital Premium's decision on the logical sequencing of this discovery based solely on its claim that it would be inconvenient for its witness to be deposed twice. This argument fails for several reasons. *First*, it would be completely inefficient to delay the completion of this deposition. Any minor gains in efficiency from allowing Mr. Shockey to be deposed only once is dramatically outweighed by the inefficiencies caused by waiting until late in discovery to resolve these underlying collection and production issues.[4] If the corporate representative deposition reveals broader issues with respect to BankDirect's collection and production process, additional productions by BankDirect likely will be necessary. This will require many witnesses to be re-deposed (based on the newly produced documents). In short, the parties will be forced to re-do a substantial portion of the discovery already completed. Similarly, the inefficiency imposed on the witness and the parties from having this additional deposition will be minimal. The first portion of the deposition went only approximately two hours, and Capital Premium believes that only approximately two additional hours will be needed to complete the deposition.

---

[4] Given Mr. Shockey's role—he is far and away the most important witness on BankDirect's and TCB's side of this case—he will almost certainly be one of the final individuals deposed in this case, as Capital Premium will want to substantially complete other written and deposition discovery prior to deposing Mr. Shockey.

*Second*, the happenstance of Mr. Shockey being chosen as the corporate representative for the second portion of this deposition was wholly of BankDirect's choosing. BankDirect cannot be permitted to further delay this deposition simply by selecting Mr. Shockey when another BankDirect or TCB employee certainly could have been designated.

*Third*, putting aside questions of efficiency, BankDirect cannot be permitted to further delay this crucial deposition testimony. As laid out at length above, this deposition notice has been outstanding for nearly four months. At every turn, BankDirect has ignored communications from Capital Premium and wholly flouted its obligations under the Federal Rules to comply with this discovery request. Allowing BankDirect to further delay this continued deposition until the time that Mr. Shockey is deposed in his individual capacity would let BankDirect put off this deposition for more than six months from the time the initial notice was served. This is wholly unreasonable.

*Fourth*, the testimony from Mr. Shockey will be critical in allowing both parties to analyze their respective cases in advance of the settlement conference that is currently scheduled for September 20, 2017. As recounted above, BankDirect's and TCB's document production and the deposition testimony of Mr. Fisch raise serious concerns about spoliation that could dramatically impact the outcome of this case. Receiving a fuller picture of this issue (and other discovery issues) through Mr. Shockey's testimony will be crucial to allowing both parties to properly analyze and value their claims in advance of that conference. Capital Premium therefore requests that BankDirect be ordered to present its witness prior to September 20, 2017.[5]

---

[5] Although 20 days may be a relatively short lead time for this deposition, it is certainly a reasonable amount of time under the Federal Rules. Moreover, any "time crunch" has been caused by BankDirect's own obstinacy in response to the deposition notice over the last four months.

## CONCLUSION

Because this deposition notice has been outstanding for nearly four months, and because there are absolutely no grounds to further delay the taking of testimony from BankDirect's corporate representative, Capital Premium requests an order requiring that BankDirect produce a corporate representative in advance of the September 20, 2017 settlement conference.

Submitted:  September 1, 2017

/s/ Justin Barker
Justin A. Barker (IL 6274518)
jbarker@kirkland.com
Timothy Knapp (IL 6300232)
timothy.knapp@kirkland.com
Casey McGushin (IL 6313465)
casey.mcgushin@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: 312-862-2000
Fax: 312-862-2200

*Attorneys for Defendant Capital Premium Financing, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that, on September 1, 2017, a true and correct copy of **MOTION TO COMPEL ATTENDANCE OF BANKDIRECT CAPITAL FINANCE, LLC'S CORPORATE REPRESENTATIVE AT DEPOSITION** was served on all parties having made appearances in this matter via the Court's ECF Notification System.


/s/ *Justin Barker*
*An attorney for Defendant Capital Premium Financing, Inc.*