# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BANKDIRECT CAPITAL FINANCE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15 C 10340 |
| CAPITAL PREMIUM FINANCING, INC., | ) Judge John Z. Lee |
| Defendant, | ) |
| v. | ) |
| BANKDIRECT CAPITAL FINANCE and TEXAS CAPITAL BANK NATIONAL ASSOCIATION, | ) |
| Counter-Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff BankDirect Capital Finance, LLC ("BankDirect"), Defendant Capital Premium Financing, Inc. ("CPFI"), and Counter-Defendant Texas Capital Bank National Association ("TCB") have brought a number of claims against one another which arise out of a failed business relationship. BankDirect and TCB have moved to dismiss Counts VII and VIII of CPFI's second amended counterclaims. For the reasons given below, BankDirect and TCB's motion is denied.

## Background[1]

BankDirect and CPFI origineate and service loans for the financing of insurance premiums. CPFI's 2d Am. Countercl. ("Countercl.") ¶ 2, ECF No. 172. TCB controls BankDirect and directs its conduct. *Id.* ¶¶ 104, 105, 128. BankDirect's primary customer segment is large insurance agencies, while CPFI focuses on small to mid-sized insurance agencies. *Id.* ¶¶ 4, 5.

In 2010, CPFI and BankDirect entered into a set of agreements under a Master Transaction Agreement ("Master Agreement") designed to substantially intertwine the two companies' sales, marketing, and financing. *Id.* ¶¶ 1, 9, 10. The Master Agreement also gave BankDirect an option to purchase certain CPFI assets and liabilities upon the Master Agreement's expiration. *Id.* ¶ 10.

When the Master Agreement expired in 2016, BankDirect attempted to exercise the purchase option, and CPFI refused to sell. *Id.* ¶ 136; 3d Am. Compl. ¶¶ 123–40, ECF No. 160. As a result, BankDirect has brought a number of claims, including breach of contract (Counts III, IV and V) and breach of the implied duty of good faith (Count VI). BankDirect also seeks a declaration that the agreements between the parties are enforceable and that it satisfactorily performed its obligations under the agreements (Count II).[2]

---

[1] The following facts are taken from CPFI's Second Amended Counterclaims and are accepted as true on review of BankDirect and TCB's motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2] BankDirect has voluntarily withdrawn Count I.

For its part, CPFI's counterclaims contend that BankDirect and TCB breached the parties' agreements (Count II and III) and the covenant of good faith and fair dealing (Count IV). CPFI also alleges that BankDirect and TCB fraudulently induced CPFI to enter into the agreements (Count VI); that the agreements, including the purchase option, are void (Count I); and that BankDirect and TCB have been unjustly enriched (Count V). In addition, CPFI claims that BankDirect and TCB misappropriated proprietary information in violation of the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.* (Count VII). Lastly, CPFI brings a conversion claim (Count VIII) alleging that, after the parties' dispute arose, BankDirect and TCB unilaterally seized $1,000,000 from CPFI's deposit account without having a contractual right to do so.

Before the Court is BankDirect and TCB's motion to dismiss CPFI's counterclaims for trade-secret misappropriation and conversion (Counts VII and VIII, respectively).

## **Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of claims under Rule 8. *See Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). The federal notice pleading standard requires claims to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). Claims need provide only "enough detail to give [defendants] fair notice of what the claim is and the grounds upon which it rests, and, through his allegations,

3

show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). In evaluating a Rule 12(b)(6) motion, all well-pleaded allegations are accepted as true, and courts must draw all reasonable inferences in the claimant's favor. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

## Analysis

### I. ITSA Claim (Count VII)

BankDirect and TCB move to dismiss CPFI's trade-secret misappropriation claim under the ITSA, 765 Ill. Comp. Stat. 1065/1 *et seq*. "To state a claim for trade secret misappropriation, a plaintiff must allege: (1) that the information at issue was a trade secret; (2) that it was misappropriated; and (3) that it was used in the defendants' business." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 849–50 (N.D. Ill. 2011) (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F.3d 714, 721 (7th Cir. 2003)).

"A trade secret is information that '(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.'" *Id*. (quoting 765 Ill. Comp. Stat. 1065/2(d)). "While it is true that specificity of concrete trade secrets is required to support a finding of misappropriation, . . . the alleged trade secrets need not be disclosed in detail in a complaint to survive a motion

4

to dismiss." *Id*. at 850 (citing *AutoMed Techs., Inc. v. Eller,* 160 F. Supp. 2d 915, 920–21 (N.D. Ill. 2001) (internal citation omitted); *see Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 771 (N.D. Ill. 2009) ("ITSA plaintiffs are not required to plead highly specific facts on improper trade secret use, because such facts often will not be available before discovery.") (citing *Sentry Pool v. Wave Tec Pools, Inc.,* No. 07–4082, 2008 WL 3200837, at *3 (C.D. Ill. Aug. 6, 2008)); *see also Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818–19 (N.D. Ill. 2014) (collecting cases for the proposition that "courts have found [trade-secret] allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms").

Moreover, under Illinois law, customer lists, pricing data, and similar information "can constitute trade secrets depending on the facts of each case." *Id*. (collecting cases).

BankDirect and TCB make a number of arguments for why CPFI fails to state a legally cognizable trade-secret misappropriation claim. First, they contend that CPFI's claim is improperly based on an implied duty of confidentiality, rather than the explicit duty set forth in the Master Agreement. Counterdefs.' Mem. Supp. at 7–10, ECF No. 150. As an initial matter, the Court observes that BankDirect and TCB cite only to summary-judgment opinions to support their argument, rather than cases based upon pleading standards. *Id*. (citing *Nilssen v. Motorola, Inc.*, 963 F. Supp. 664, 679–80 (N.D. Ill. 1997); *Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool Corp.*, 15 C 5951, 2017 WL 2573033, at *22 (N.D. Ill. May 18, 2017); *Fast Food*

5

*Gourmet, Inc. v. Little Lady Foods, Inc.*, 542 F. Supp. 2d 849, 865 (N.D. Ill. 2008)). In any event, CPFI concedes that its ITSA claim is limited to whatever obligations the confidentiality provision in the MTA imposed upon BankDirect and TCB and that the information at issue comprises the information that CPFI identified as confidential pursuant to the Master Agreement.[3] Countercl. ¶¶ 97, 98. This is enough specificity for pleading purposes.

In addition, BankDirect and TCB argue that CPFI fails to sufficiently allege that customer lists, pricing information, and other specific customer and agency-related information were trade secrets because BankDirect, not CPFI, owns this information. In support, BankDirect and TCB quote contract language stating that BankDirect was to be the exclusive purchaser of certain insurance loans originated by CPFI. *See* Counterdefs.' Mem. Supp. at 11. BankDirect and TCB also cite to several other provisions of the parties' agreements that they contend granted BankDirect and TCB ownership of the information at issue. *See id.* In response, CPFI contends that these provisions evidence ownership of the loan documents, but not the customer, agency, and pricing information at issue.

To CPFI's point, none of the contractual provisions that BankDirect and TCB invoke in their opening brief explicitly addresses the ownership of the *information* at

---

[3] It is true enough that CPFI also states that "[a]dditionally, the confidential information that CPFI provided to BankDirect was provided under circumstances that created a reasonable expectation [of confidentiality] that gave to a duty [of confidentiality]." Countercl. ¶ 99. However, in its response, CPFI disavows that its claim is rooted in anything other than the terms of the Master Agreement. Def.'s Resp. at 4, ECF No. 169.

6

issue. *See* Counterdefs.' Mem. Supp., Ex. A, ECF No. 150-1. Instead, they indicate, in one fashion or another, that CPFI will maintain "Loan Files" on BankDirect's behalf and that BankDirect is entitled to access them. But BankDirect and TCB do not provide the complete definitions of this and other relevant terms in the opening brief. Instead, it is only in the reply brief that BankDirect and TCB develop the argument that the assets purchased from CPFI include the information in question. *See* Counterdefs.' Reply at 4–8. But this is too late. After all, by waiting until the reply brief, they have effectively prevented CPFI from responding to these arguments, and thus the arguments are deemed waived. *See M.G. Skinner Assocs. Ins. Agency, Inc. v. Norman–Spencer Agency, Inc.,* 845 F.3d 313, 321 (7th Cir. 2017).
,

Lastly, BankDirect and TCB contend that CPFI fails to allege that it took "efforts . . . to maintain [the] secrecy or confidentiality" of the information at issue. Counterdefs.' Mem. Supp. at 12 (quoting 765 Ill. Comp. Stat. 1056/2(d)). But, to the contrary, CPFI alleges that it took "reasonable measures"—including its confidentiality provision with BankDirect—to protect the information from being generally known to the public or competitors. Countercl. ¶ 215.

In sum, CPFI plausibly alleges that BankDirect and TCB improperly used its confidential customer and pricing information to their benefit and to the detriment of CPFI. *Id*. ¶¶ 94–103. This is sufficient to state an ITSA claim for pleading purposes. *See Fire 'Em Up, Inc.,* 799 F. Supp. 2d at 849–50.

7

## II. Conversion Claim (Count VIII)

BankDirect and TCB also move to dismiss CPFI's conversion claim. Under New York law,[4] "[t]he tort of conversion is the [intentional] 'exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession.'" *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 328–29 (S.D.N.Y. 2001) (quoting *Lopresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997)).

Moreover, a contracting-counterparty "defendant may be liable in tort [only] when," for a negligence claim, "it has breached a duty of reasonable care distinct from its contractual obligations," or when, for other torts, the defendant "has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995). Thus, "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Briarpatch*, 148 F. Supp. 2d at 39; *see, e.g., BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,* 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013) ("New York law makes clear that the allegedly tortuous [sic] conduct must be such that there would be liability even if no contract existed." (internal quotation marks omitted)).

---

[4] BankDirect and TCB contend that New York law governs CPFI's conversion claim. In response, CPFI suggests that its claim may instead be governed by Illinois law, but states that the differences between New York and Illinois law are immaterial, and it proceeds to engage with New York case law. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 2001) (stating that courts do not concern themselves with which state's law applies unless the parties bring substantive differences to a court's attention). The Court will do the same.

8

In assessing whether a conversion claim fits this mold, "the primary consideration . . . is whether the contract itself speaks to the issue." *TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*, 51 F. Supp. 3d 405, 411–13 (S.D.N.Y. 2014). Moreover, a conversion claim must seek damages that are not merely duplicative of those sought for a breach-of-contract claim in the same action. *See DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*, No. 99 CIV. 2231 (HBP), 2005 WL 2848939, at *16–17 (S.D.N.Y. Oct. 28, 2005); *Briarpatch*, 148 F. Supp. 2d at 329; *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148–50 (S.D.N.Y. 2000).

Here, CPFI argues that, while BankDirect and TCB may eventually be entitled to the funds held in its deposit account (assuming, of course, that they prevail on the breach of contract claim), they had no contractual right to unilaterally seize the funds from the account before the claim is adjudicated. Countercl. ¶ 222. In response, BankDirect and TCB contend in passing that they are allowed to unilaterally seize the funds in the event of a breach pursuant to their rights as a secured creditor under the Security Agreement. Counterdefs.' Mem. Supp. at 5 (citing 2d Am. Compl., Ex. F § 3.08, ECF No. 40-6). But, again, BankDirect and TCB fail to adequately explain why this is so. And so the argument is deemed waived.

Next, BankDirect contends that the damages CPFI seeks for its conversion claim is duplicative of the damages it seeks for its breach-of-contract claims. But, in addition to recovery of the $1,000,000 in seized funds, CPFI seeks punitive damages for its conversion claim. *See* Countercl. ¶ 226. As such, CPFI "may be entitled to

damages beyond those available for the breach of contract claim[s]." *Pillard v. Sotheby's, Inc.*, No. 95 CIV. 7775(JFK), 1997 WL 381795, at *7 (S.D.N.Y. July 10, 1997) (finding that tort and breach-of-contract claims were not duplicative because punitive damages "can be awarded for conversion claims, but not breach of contract claims").

Lastly, BankDirect and TCB assert for the first time in their reply that courts must also assess whether it is in the "public interest" for a contract-counterparty plaintiff to be able to bring a tort claim independent of a breach-of-contract claim. Counterdefs.' Reply at 10, ECF No. 192 (citing *N.Y. Univ.*, 662 N.E.2d at 763; *Mindset Ltd. v. Quality Controlled Biochemicals, Inc.*, No. 99 Civ. 6070(AGS), 2000 WL 28167, at *3 (S.D.N.Y. Jan. 14, 2000)). But because this argument is not raised in the opening brief, it too is waived. *See Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 379 (N.D. Ill. 2012) ("Arguments . . . that could have been raised in the opening brief but are first raised in a reply brief are waived.").

In any event, the cases to which BankDirect and TCB cite do not support their position. In *New York University*, 662 N.E.2d at 767–68, the New York Court of Appeals instructed that, when a party seeks to bring a negligence claim arising out of a purported contract breach, a court must determine if it would be in the public interest for a defendant to have a duty of reasonable care in the performance of its contractual obligations.[5] But, for other torts, courts are to consider whether the

---

[5] The duty of reasonable care is an element of negligence claims, not of intentional torts like conversion. *See, e.g., Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*, No. 07-CV-1003 (CBA), 2008 WL 905188, at *6 (E.D.N.Y. Mar. 31, 2008) ("[I]ntentional torts . . . [do

10

defendant "has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations." *N.Y. Univ.*, 662 N.E.2d at 767.

As such, BankDirect and TCB's citation to *Mindset*, 2000 WL 28167, at *3, which addressed a negligence claim, is inapposite. And the other cited case, *Brown v. Kristal Auto Mall Corp.*, 149 A.D.3d 1025 (N.Y. App. Div. 2017), is similarly unhelpful to BankDirect and TCB's position. There, the New York Appellate Division considered whether a conversion claim should be dismissed, and it did so on the basis that the plaintiff had failed to allege "tortious conduct separate and apart from . . . [the defendant's] contractual obligations." *Id.* at 1025 (citing *N.Y. Univ.* 662 N.E.2d at 767–68). CPFI does so here.

## Conclusion

For the reasons stated herein, BankDirect and TCB's motion [149] to dismiss Counts VII and VIII of CPFI's second amended counterclaims is denied.

**SO ORDERED.**  ENTERED: 7/11/18

_____
**JOHN Z. LEE**
**United States District Judge**

---

not] require proof of any applicable duty of care."); *see also De Long Corp. v. Morrison-Knudsen Co.*, 200 N.E.2d 557, 558–59 (N.Y. 1964) (stating that conversion is an intentional tort under New York law).