# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BANKDIRECT CAPITAL FINANCE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 10340 |
| | ) | |
| v. | ) | Judge John Lee |
| | ) | |
| CAPITAL PREMIUM FINANCE, INC., | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Although the case is now in its fourth year, the parties continue to have disputes about discovery. Little wonder that Judge Posner called "protracted discovery" the "bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000). *See also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).

Fact discovery was originally set to close by the parties' choice – they demanded an "expedited discovery schedule" [Dkt. #24] - on July 31, 2017. [Dkt. #63]. The parties took until December 7, 2016 – nearly a year into the case – to agree on that deadline and their overall schedule. They asked that the schedule be modified a week and a half later. [Dkt. #64]. A month and a half after that, on January 30, 2017, Capital Premium Finance sought and was granted an extension of the schedule, with fact discovery set to close on August 29, 2017. [Dkt. # 68, 71]. That date came and went, and the parties requested and were allowed another extension to May 13, 2018. [Dkt. #142, 171]. BankDirect was given three additional weeks, to June 6th, to finish certain document production. [Dkt. #252]. But, the disputes continued, and near constant court intervention has been necessary. [Dkt. #207, 209, 212, 223, 224, 225, 227, 229, 231, 239, 241, 252, 254, 255, 256, 262, 263, 264].

But, the end– or at least the beginning of the end – is perhaps in sight. Pursuant to the parties' request and my Order of June 25, 2018 [Dkt. #255], Capital Premium Finance has submitted 143 documents for *in camera* review and evaluation of its claims of attorney-client privilege as to redacted portions of those documents.[1] It should be said that, in the grand scheme of federal litigation discovery disputes, the current attorney/client privilege dispute is restrained and quite reasonable. This fact tends to support the good faith of Capital Premium Finance's limited and restrained assertion of the privilege as to these materials because far more common is the sweeping, broad assertion of the privilege as to hundreds, if not thousands, of documents. Moreover, there are actually far fewer than 143 email chains at issue because each document reflects the then-current step in each chain. In other words, one single email exchange might give rise to 7 or 8 documents as individuals respond. While the amount of redactions are actually fewer than initial appearances might suggest, this manner of presenting the email chains hinders an accurate and consistent review of the redactions with duplicate redactions appearing anywhere among the 1500 or so total pages of materials.

Only the redacted portions of those documents are at issue, with the redactions in the versions provided to the court having been set out "transparently" and quite clearly in gray boxes. As we have said, the documents are email chains regarding the drafting of the suite of agreements – which the parties call the "Transaction Facility" – that gave rise to this litigation and attached drafts of the agreements from various stages of their negotiation. The emails were exchanged among five individuals: attorneys Rick Taggert and James Kruse from the firm of Kruse Landa Maycock &

---

[1] While there appear to be only 143 documents involved, the email chains, themselves, occupy three large, 3-ring binders.

Ricks, LLC, whom Capital Premium Finance retained to assist with the drafting and negotiation of the Transaction Facility; Jeff Guylay, the Managing Director of investment bank, Colonnade Advisors, whom Capital Premium Finance retained to assist with the drafting and negotiation of the Transaction Facility; Scott Crowley, Capital Premium Finance's chief financial officer; and Chris Chidester, Capital Premium Finance's corporate controller. BankDirect argues that the documents cannot be privileged because they involve "a non-attorney third party," Mr. Guylay, and his input was not necessary for Capital Premium Finance's counsel to provide legal, as opposed to business, advice to Capital Premium Finance. [Dkt. #264, at 2, 5-6].

**A.**

The attorney-client privilege protects from discovery confidential communications between client and attorney that were made in order to obtain legal assistance. *Fisher v. United States,* 425 U.S. 391, 403 (1976); *United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014); *United States v. Leonard-Allen*, 739 F.3d 948, 95253 (7th Cir. 2013). The burden of proof is on the party claiming privilege. *Shaffer v. AMA*, 662 F.3d 439, 446 (7th Cir. 2011); *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2010 WL 5014483, at *3 (S.D. Ohio 2010). Whether the privilege exists is a fact-intensive inquiry, *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000), and cannot be solved by simply looking to the identity of the sender or recipient of a communication, *In re: Subpoena Upon Nejame Law PA*, 2016 WL 3125055 at *3 (N.D. Ill. 2016), for the lawyer–client relationship, itself, "does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client.'" *In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980). *See also Burden–Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL

1804350, at *4 (N.D. Ill. 2018).

The existence and scope of the privilege is defined by its purpose, which is "to encourage clients to make full disclosure to their attorneys." *Leonard*, 739 F.3d at 953; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). Thus, "[i]t goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *United States v. Robinson,* 121 F.3d 971, 974 (5th Cir.1997). *See also United States v. Williams*, 698 F.3d 374, 380 (7th Cir. 2012)("'An individual cannot purchase anonymity by hiring a lawyer to deliver his money or his messages.'"). Phrased differently, there is no *prima facie* presumption of privilege. *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009. *See also Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1162 (D.S.C. 1974). Determinations of privilege are generally made on a document by document basis. *United States v. Sakhanskiy*, 2018 WL 2146047, at *2 (9th Cir. 2018). *But see Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, 2018 WL 3105987, at *6 (N.D. Ill. 2018)(categories may suffice); *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 894 (N.D. Ill. 2018)( listing cases recognizing that sampling may be an appropriate technique under certain circumstances).

Similarly, communications from the attorney to the client are privileged if they constitute legal advice or would reveal the substance of a client confidence—directly or indirectly. *See Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397 (7th Cir. 2018); *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir.1990);*Vill. of Rosemont v. Priceline.com Inc.*, 2010 WL 4876217, at *3 (N.D. Ill. 2010); *Koken v. American Patriot Insurance Agency, Inc.,* 2007 WL 914251 at *2 (N.D.Ill.2007):*Bell Microproducts, Inc. v. Relational Funding Corp.,* 2002 WL 31133195 (N.D.Ill.2002) (Shadur, J.).

4

The question is always whether the "primary" or "predominant purpose" of the communication is to render or solicit legal advice. *See E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. Insert); *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 893 (N.D. Ill. 2018);*Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 322 F.R.D. 571, 584–85 (S.D. Cal. 2017).

Because the privilege operates "in derogation of the search for truth," it is narrowly construed, *Fisher v. United States*, 425 U.S. 391, 403 (1976). It applies only where necessary to achieve its purpose. *Id. See also United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir.2007); *Shaffer v. AMA*, 662 F.3d 439 (7th Cir. 2011). "[W]here this purpose ends, so too does the protection of the privilege," *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir.2007).

**B.**

In this case, the parties' dispute focuses on the distinction between "business" advice and "legal" advice. This critical distinction is often not an easy one to make – line drawing in any area seldom is, *see, e.g., NIFLA v. Becerra*, _U.S._, 138 S.Ct. 2361, 2373 (2018) – even allowing for the imprecision inherent in language. Indeed, it can be quite difficult. *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005). *Accord In re Lindsey*, 148 F.3d 1100, 1123 (D.C. Cir. 1998); *United States v. Louisiana*, 2015 WL 4619561, 4 (M.D.La. 2015)(quoting *American Nat'l Bank & Trust*); *Brainware, Inc. v. Scan-Optics, Ltd.,* 2012 WL 2872812, n. 3 (E.D.Vir. 2012). But that difficulty is not, of course, an insuperable bar to decision. As always, the touchstone of the inquiry is whether the purpose of the communication is "generated for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). For example it has been said that legal advice, as contrasted with business

5

advice, "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id*. Courts have held that "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000); *see also Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 856 F.3d 356, 364–65 (5th Cir. 2017); *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993).

It must not be forgotten that the mere participation of a lawyer does not make statements to or from the lawyer automatically protectable. *Neuder v. Battelle Pacific Northwest National Laboratory*, 194 F.R.D. 289, 293 (D.D.C. 2000). The privilege extends to communications about legal subjects, and "it is hard to see why a business evaluation meets that description. Hiring lawyers to do consultants' work does not bring a privilege into play." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). But, owners of businesses may regularly consult their attorneys about a variety of problems arising in the course of the business. *Swidler & Berlin v. United States*, 524 U.S. 399, 407–08 (1998).

*Apropos* to the instant case, "no one gets into a multi-million-dollar . . . business [deal] without legal counsel." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008). The wise and not uncommon thing to do in such a case is to have a combination of legal and financial advice. That was obviously the plan here, as Capital Premium Finance brought in not only attorneys from Kruse Landa Maycock & Ricks, but a financial advisor from Colonnade Advisors in order to steer it through the complicated negotiation and execution of the Transaction Facility.

Invariably, the contracts underlying complex and intricate commercial transactions have commercial and legal aspects to them – and the two, as we have noted, are often difficult, if not

6

impossible, to separate. And functionally, they should not be broken down into separate disparate components. For without the involvement and contributions of the non-lawyer in the transaction, legal advice would essentially be impracticable. Indeed, reviewing the 143 documents presented here calls to mind Justice Stewart's famous lament over the difficulty of defining pornography. *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964)(Stewart, J., concurring)("I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it . . . ").

Because of the perceived factual similarity between this case and *Stafford Trading, Inc. v. Lovely*, 2007 WL 611252, *3 (N.D. Ill. 2007), both sides have relied extensively on that decision, which unhesitatingly acknowledged the "difficulty in negotiating the fine line between legal as opposed to business advice...."[2] The former is protected, the latter is generally not, although "[c]lient communications intended to keep the attorney apprised of business matters may be privileged if they embody 'an implied request for legal advice based thereon.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987). *Accord Antech Diagnostics, Inc. V. Veterinary Oncology and Hematology Center, LLC,* 2018 WL 2254543, *6 (D.Conn. 2018)("An agent, such as a financial advisor, may have communications with an attorney that are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer."); *Crane Security Technologies, Inc. V. Rolling Optics,* AB, 230 F.Supp.3d 10 (D.Mass 2017)(even though business advice is not within the privilege, legal advice relating to

---

[2] On review, Judge Coar concluded that none of the findings were "clearly erroneous nor contrary to law" and thus refused to modify or set aside the conclusions in *Stafford. See* 2007 WL 1238915 (N.D.Ill. 2007)(Coar, J.).

7

business matters clearly is); *Baylor v. Mitchell Rubenstein & Assoc., P.C.*, 130 F.Supp.3d 326, n. 5 (D.D.C. 2015)(same); *United States v. Ghavami*, 882 F.Supp.2d 532 (S.D.N.Y. 2012).

In short, case after case has recognized that the status of a person as a financial analyst or advisor is not the determining factor in deciding whether a given communication in which the analysis or advisor participates is protected by the attorney-client privilege.

## C.

Given BankDirect's extensive reliance on the results in *Stafford Trading, Inc.*, [Dkt. # 264, at 4-6], its opening position that the mere inclusion of the financial advisor, Mr. Guylay, in the email chains waives the attorney-client privilege is surprising [Dkt. # 264, at 2] – and mistaken. *Stafford Trading* most assuredly did not hold that a communication automatically lost its privileged protection because a financial or third-party consultant was also a recipient of or involved in or copied on the communication. Quite the contrary. *Stafford Trading*, which canvassed a number of seemingly competing authorities recognized the intricate and complex nature of many modern transactions necessarily involve not only lawyers, but investment bankers or financial advisors who assist a lawyer in various ways in the giving of legal advice. Indeed, *Stafford Trading* acknowledged that courts "have reached varied results in assessing whether and when communications with a third-party consultant assisting the clients results in a waiver of the attorney-client privilege." 2009 WL 611252 at *4. Thus, the mere presence of a non-lawyer/consultant on an email chain does not translate into an automatic waiver.

After canvassing a significant number of cases, *Stafford Trading* emphasized that courts have reached varied results in assessing whether and when communications with a third-party consultant assisting the client results in a waiver of the attorney-client privilege. *Stafford Trading* concluded

8

a number of the holdings were artificial and "too restrictive." The Opinion recognized that in today's marketplace "attorneys need to be able to have confidential communications with investment bankers to render adequate legal advice." *Id*. at 6. Hence, it adopted what it called a "balanced approach" to the question of whether a given document falls within the attorney-client privilege.[3] But this is simply another way of acknowledging that in any complex inquiry based on intractable factual variables, rigid tests are artificial and have limited utility. *Cf. United States v. Harper,* 662 F.3d 958, 962 (7th Cir. 2011). *Accord Sandra T.E. v. South Berwyn School Dist*. 100, 600 F.3d 612, 619 (7th Cir.2010).

Analysis of attorney-client privilege claims requires then a discerning analysis, not merely a demonstration that a financial analyst or consultant may have been a recipient of a questioned document. But there is nothing unique or path-breaking in this recognition. Quite the contrary; it accords with well-established teachings of the Supreme Court going back to the last century. As *Stafford Trading* and scores of other cases have properly recognized, and as BankDirect concedes, the real issue is whether Mr. Guylay confidentially communicated with Capital Premium Finance's counsel for the purpose of obtaining or providing legal advice for the project. *Stafford Trading*, 2007 WL 611252, at *7. Determining the application of the attorney-client privilege requires a careful analysis, not the invocation of a rule of easy and automatic application.

"[I]n today's [highly complex and integrated] marketplace attorneys need to have confidential communications with investment bankers to render adequate legal advice." *Stafford Trading* at *6.

---

[3] In a later case, *Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009), the court noted that under the "balanced approach" to the application of the attorney-client privilege, the "privilege should be limited to instances where a third party ... assists a lawyer in giving legal advice," and "where the third party's participation was required to enable the attorney to render legal advice."*Id.* at 666.

*See also Firefighters' Retirement System v. Citco Group Ltd,* 2018 WL 2323424, n. 9 (M.D.La. 2018)("Moreover, while the undersigned agrees that other courts, relying on *Ackert*, have found third-party communications with investment advisors to fall outside the scope of attorney-client privilege, the controlling factor in these cases is whether the third-party was necessary for the rendering of legal advice or was instead providing business advice."); *Schmucker v. Johnson Controls, Inc.*, 2017 WL 6043328 (N.D.Ind. 2017); *Glenwood Halsted LLC v. Village of Glenwood*, 2013 WL 140794 (N.D.Ill. 2013).

After review of the documents with the foregoing concepts in mind, it must be concluded that, in the main, the majority of redactions are appropriate.

**D.**

By far the lion's share of the approximately 1500 pages of submitted materials is taken up by drafts and revisions of the agreements making up the "Transaction Facility." Typically, Mr. Guylay or Mr. Crowley, or both, would make suggestions for inclusion, asking the attorneys how to go about it, and the attorneys, mostly Mr. Taggert, would send a draft back. Comments and changes went both ways, attorneys to finance people and *vice versa*, as the parties were in ongoing negotiations. While drafting and honing commercial documents is not litigation-related advice (although it often comes to that when breaches and interpretation issues arise), it would be idle to suggest that non-litigation advice is always outside the scope of the privilege, *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 416 (N.D. Ill. 2006), as the privilege extends to "legal advice of any kind." *Rehling,* 207 F.3d at 1019. And, so, almost all courts have concluded that the process of drafting and editing, reflecting as it often does both requests for and provision of, legal advice, is protected by the attorney-client privilege. *See, e.g., Kelley v. Lempesis*, 2015 WL 4720054, at *4

(N.D. Ill. 2015); *Lee v. Chicago Youth Ctrs.,* No. 12 CV 9245, Dkt. No. 103, at 2 (N.D.Ill. 2014)(finding under the federal privilege that where a party made a request for legal advice regarding an attached draft plan, and an attorney responded with revisions to the draft plan, the response was protected by the attorney-client privilege); *Acosta v. Target Corp.,* 281 F.R.D. 314, 321 (N.D.Ill.2012) (finding under the federal privilege that "[c]ounsel's comments on, and revisions to, drafts of documents that [we]re intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions communicate legal advice and have been maintained as confidential"); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010); *Stafford Trading, Inc.*, 2007 WL 611252, at *8; *McCook Metals L.L.C.,* 192 F.R.D. 242, 255 (N.D.Ill.2000) (draft contracts with an attorney's handwritten notes contained legal advice were privileged);*Muller v. Walt Disney Productions,* 871 F.Supp. 678, 682 (S.D.N.Y.1994)(preliminary drafts of contracts are generally protected by the attorney-client privilege because they reflect client confidences, legal advice, and opinions of attorneys). BankDirect does not attempt to argue otherwise. Accordingly, the redacted attachments of the draft agreements submitted for *in camera* review are protected by the attorney-client privilege and need not be revealed or produced.

### E.

A smaller category of redactions consists of communications, mostly to and from Mr. Guylay and Mr. Taggert, leading to those drafts and revisions of drafts. As such, they represent an exchange of information necessary to providing legal advice embodied in the various drafts of the contracts forming the Transaction Facility. The redactions reveal, or tend to reveal, confidential information and the thoughts of both the financial advisor and attorneys throughout the back and forth of the drafting of the agreements and their negotiation. These redactions, then, are privileged and need not

be produced. They are not the idle and independent musings of independent actors unrelated to the input from lawyers.

In some instances, these redactions present close cases in what is, as already noted, a close case. In this regard, it should be noted that *Stafford Trading* found that 44 of 52 documents were privileged. Where the line seemed to be close, *Stafford Trading* – perhaps understandably given the nod that in close cases often goes to a finding of privilege – found the document to be protected.[4] In the main though, the documents *Stafford Trading* found not privileged were charts and duplicates of charts from human resources containing purely business information, where legal advice was not sought or given. Thus, when duplicates are thrown out, *Stafford Trading* actually found no more than a handful of documents were not privileged. Consequently, given the similarity between the situation in *Stafford Trading* and the one here, there is little to take from *Stafford Trading*'s exegesis of the attorney-client privilege issue to support BankDirect's position that the redactions in the instant case are not privileged.

Bank Direct further submits that *Stafford Trading* closely scrutinized whether input from the financial advisor "'was necessary for [the] attorney to advise [the client[]]," and whether the advice provided "in each communication 'was primarily legal in nature.'" [Dkt. #264, at 5-6 (quoting *Stafford Trading*, 2007 WL 611252, *3). One ought not be surprised at the court's close scrutiny. After all, that is a basic requirement demanded by all the cases. But, it should be noted that the quote attributed to the court in *Stafford Trading* is actually from the plaintiff's brief in that case. *See* 2007 WL 611252, *3.

---

[4] The difficulty of decision is not a sufficient justification for finding in favor of a privilege in any given case. Determinations ought not be by default, as there is no presumption of privilege in close cases, and, in any event, determinations of privilege are subject to the rule of strict construction.

While the court demanded that plaintiff "demonstrat[e] that the [financial advisor] confidentially communicated with [counsel] for the purpose of obtaining or providing legal advice," *Stafford Trading*, 2007 WL 611252, *7, there is little, if anything, to distinguish the demonstration that was successful in *Stafford Trading* (and a host of other cases) from the one that BankDirect criticizes here. For example, *Stafford Trading* found protected documents which were described as "comparison of prior draft of merger agreement with then current draft of merger agreement prepared by Kirkland & Ellis for the purpose of providing legal advice on the structure of the TD Transaction and reflecting legal advice regarding same", or "comparison of prior draft of merger agreement with then current draft of merger agreement prepared by Goldman Sachs for the purpose of obtaining legal advice." [Case No. 05 CV 4868, Dkt. # 154-2, Page 5 of 14, Documents 19, 20, 22]. *See* 2007 WL 611252, *9. The redactions in this case or descriptions thereof are comparable. Indeed, the redactions in this second category are all of a similar nature – comments, suggestions, and/or questions between financial advisor and attorneys pertaining to the drafting of the agreements making up the Transaction Facility.

Finally, the much smaller category of redactions does not pass muster under basic considerations applicable to the application of the attorney-client privilege. It bears repeating that communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence. *Carmody*, 893 F.3d at 397; *Rehling*, 207 F.3d at 1019; and cases cited *supra* at 4.

## F.

With the exception of the documents referred to below, the claims of privilege are valid. The following redactions, however, are found not to be privileged, and the documents must be produced

without the excisions that have been made:

#1. First redaction box. Attorney merely reporting what he is working on; no advice or confidence revealed.

#20. First redaction box. Financial advisor merely stating he is forwarding comments; no advice or confidence revealed.

#22. First redaction box. Attorney asking for input but does not reveal topic; no advice or confidence revealed.

#25. First redaction box. Attorney saying he will send comments; no advice or confidence revealed.

#29. First and second redaction boxes. Same as #25.

#31. First redaction box. Attorney asks for unspecified information; no advice or confidence revealed.

#41. First redaction box. Attorney says that Capital Premium Finance and BankDirect need to discuss "a few items"; no advice or confidence revealed.

#49. Second redaction box. Cover email from attorney stating comments are attached; no advice or confidence revealed.

#63. First redaction box. Cover email from attorney stating attachment is being forwarded; no advice or confidence revealed.

#66. First redaction box. Cover email from attorney stating comments to agreements are attached; no advice or confidence revealed.

#85. Sixth redaction box. Cover email from attorney; no advice or confidence revealed.

#101. First redaction box. Attorney asking for comments; no advice or confidence revealed.

#121. First redaction box. Attorney merely asking if document is ready to be sent; no advice or confidence revealed.

#121. Second redaction box. Cover email from Capital Premium Finance; no request for advice or confidence revealed.

#128. First redaction box. Attorney asking for comments on section of document; no advice or confidence revealed.

#132. First redaction box. Attorney leaving "specifics" to client; no advice or confidence revealed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/3/18