**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BANKDIRECT CAPITAL FINANCE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 10340 |
| | ) | |
| v. | ) | Judge John Lee |
| | ) | |
| CAPITAL PREMIUM FINANCE, INC., | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Capital Premium Finance, Inc. is seeking responses to Document Requests 8 and 9, which ask for "[a]ll Documents and Communications Concerning BankDirect or any of its sales employees soliciting, pitching, or in any way attempting to get business from existing customers of Capital Premium for BankDirect, not Capital Premium" and "All Communications between BankDirect and any existing customer of Capital Premium." The requests were initially served on August 22, 2017. As the parties went back and forth on these requests, on November 14, 2017, Capital Premium provided BankDirect with a list of "52 agencies with whom [sic] Capital Premium [said it] has or had a relationship" and asked that BankDirect search for communications between itself and those 52 agencies. [Dkt. # 227, at 2; #227-5]. Capital Premium claims that it had reason to believe BankDirect had approached these agencies, with which it had or has a relationship, mostly because it had heard as much from the agencies. BankDirect's counsel doesn't say what he did with the list; we only know that its counsel claims he didn't give it to his client at that point in time.

After BankDirect's counsel spent three weeks hanging onto the list, on December 6, 2017, BankDirect sought a stay of discovery from Judge Lee in view of its motion to dismiss certain of Capital Premium's counterclaims. BankDirect's claimed concern was that:

> [e]ven with a protective order in place, the potential damage that BankDirect could suffer by turning over communications with agents that BankDirect has long-standing business relationships with is substantial. Turning over any such responsive communications would provide [Capital Premium] – a competitor of BankDirect – a window into BankDirect's business practices and the manner in which it communicates with its customers.

[Dkt. #173, ¶ 9]. Judge Lee denied that motion on January 16, 2018 stating:

> the case does have a protective order. There is an attorneys' eyes only provision in that protective order. That's what it's there for. So, therefore, plaintiffs' motion to stay response to document request 8, 9 and 20 is denied.

[Dkt. #208, at 8].

Following that denial, the parties discussed Capital Premium's outstanding discovery requests and reached an agreement. On January 26, 2018, counsel for Capital Premium wrote to counsel for BankDirect to confirm that agreement and asked counsel to let him know if he disagreed with any of it:

> In light of Judge Lee's ruling, BankDirect has agreed to produce responsive records within 21 days. This is subject to our prior agreements narrowing the scope of the Requests 8 and 9 to communications with the 51 [sic] agencies identified by Capital Premium.

[Dkt. #227-9]. Counsel for BankDirect responded: "Request Nos. 8, 9, and 20. We will produce by February 15th." [Dkt. #227-9].

That should have been the end of the matter since lawyers are expected to honor the promises they have made to their adversaries. *See Green v. John Chatillon & Sons*, 165 F.3d 18 (4th Cir. 1998)("Although Green repeatedly assured Chatillon's counsel that she would provide discovery responses, she never fulfilled these promises"); *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1255 (Fed. Cir. 1990)("A lawyer should honor promises or commitments to other lawyers and to the court, and should always act pursuant to the maxim, '[m]y word is my bond.'"); *Herrera v. Santa Fe Pub.*

2

*Sch.*, 2014 WL 4347169, at *2 (D.N.M. 2014)(a lawyer needs to abide by the promises made in discovery. "Parties have to be able to rely on what others report they will do if civil discovery is going to function without judicial intervention. A lawyer's word must be his or her bond."); *Sirazi v. Panda Express, Inc.*, 2009 WL 4232693, at *1 (N.D. Ill. 2009)(lawyers have an obligation to cooperate fairly in discovery); *Snelson v. Rahn*, 2007 WL 273478, at *3 (W.D. Mo. 2007); *Novelty, Inc. v. Gonzales*, 2005 WL 2253599, at *3 (S.D. Ind. 2005)(the Tenets of Professional Responsibility of the Indianapolis Bar Association provides, "[a] lawyer should honor promises or commitments to other lawyers and to the court, and should always act pursuant to the maxim, 'My word is my bond.'"); *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 368 (D. Neb. 2004); *In re Lincoln N. Assocs., Ltd. P'ship*, 163 B.R. 403, 409 (D. Mass. 1993).

Innumerable articles in the law reviews likewise acknowledge the criticality of lawyers keeping their promises to other lawyers. *See, e.g.,* Charles Kidd and Greg Anderson, *Professional Responsibility: Survey of the Law of Professional Responsibility*, 33 Ind. L. Rev. 1365, 1403 (2000); Craig Enoch, *Incivility in the Legal System? Maybe It's the Rules*, 47 SMU L. Rev. 199, 231 (1994).

However, February 15th came and went, and there was nothing from BankDirect. There was a flurry of emails between counsel, beginning February 28th and continuing through March 16th. [Dkt. # 227-10]. Counsel for BankDirect, finally, *again* promised to provide responses. Now the agreed date was Monday, March 12th. [Dkt. #227-10]. But, that date too came and went without responses, and counsel for Capital Premium understandably wrote to say they would be filing a motion to compel. Counsel for BankDirect now promised responses by Monday, March 19th. [Dkt. #227-10]. But, BankDirect didn't fulfill that promise either. Like the assurances that preceded it, the assurances of BankDirect's lawyers were, to use Justice Jackson's inimitable phrasing, "a promise to the ear to

3

be broken to the hope, a teasing illusion like a munificent bequest in a pauper's will." *Edwards v. California*, 314 U.S. 160, 186 (1941) (Jackson, J., concurring).[1]

On March 21st, counsel for BankDirect, in contravention of its previous promises, now for the first time said they would not be providing any responses:

> BankDirect's investigation determined that thirty-two (32) of the agencies on the list have not been entered into its FinancePro system and BankDirect has issued no premium finance quotes or accepted any premium finance loans from this list of thirty-two agencies. Given that BankDirect has not issued any loans to these agencies ( otherwise the agencies would be in BankDirect's FinancPro system), BankDirect asserts that searching for electronic communications with these thirty-two agencies is not proportional to the needs of the case.
>
> Of the seventeen (17) agencies which BankDirect even entered into its system, BankDirect's relationship with ten (10) of those agencies pre-dates the date of the MTA. All ten (10) of these agencies, and four ( 4) additional of the seventeen (17) agencies identified above, were identified on the December 2, 2011 clearinghouse sent to Capital Premium. Thus, BankDirect stands on its objections to Request Nos. 8 and 9 (specifically that these agencies are customers of BankDirect, not Capital Premium) with respect to the following fourteen (14) agencies: HUB International; Bowen Miclette & Britt Insurance Agency, LLC; Degginger Mcintosh & Associates; Ovation Risk Planner, Inc.; Bums Insurance; Insurance One Agency, Inc.; Mission Duncan; Service Insurance Agency; Duncan Insurance; Armstrong Coury Insurance; Timberline Insurance Agency, Inc.; Western Group, Inc.; The ISU Group; and Midwest Insurance Agency.
>
> For example, HUB International is one of the largest insurance agencies in the nation and has been BankDirect's customer since BankDirect's inception in 2005. The fact that Capital Premium seeks any communications between BankDirect and HUB International highlights Capital Premium's impermissible motive in Request Nos. 8 and 9.
>
> There are three (3) agencies on the list of forty-nine ( 49) you provided (Agents Alliance of Montana, Glenwood Insurance Agency, and Western Group, Inc.) that BankDirect has had contact with but has not booked any loans with since January 1,

---

[1] *Compare New Mexico ex rel. King v. Bank of America*, 2013 WL 12328915 (D.N.M. 2013)(where plaintiff's interrogatories and requests for production "were met with equally prompt objections to all discovery based on defendant's intent to file a motion to stay discovery.").

> 2016 - *i.e.* the approximate timing of Capital Premium's Counterclaim. As such, BankDirect sees no relevance to any communications with these agencies prior to January 1, 2016. If you feel otherwise, please describe the relevance of any such communications and BankDirect will reconsider its objections.

[Dkt. #227-11].

It is rather obvious that, on January 26th, counsel for BankDirect made a clear and unqualified promise to produce the documents on February 15th. The scope of the request was clear and narrowed to the listed agencies. The promise to comply was just as clear. It included no qualifications or objections. It was simply: "We will produce by February 15th." [Dkt. #227-9]. Certainly, BankDirect did not mention any objections along the lines of what was raised in the March 21st email or in the parties' joint submission. It is rather obvious that counsel breached a clear, unqualified promise. It should be rather obvious to counsel that it will be held to that promise. In addition to the cases cited earlier at 2-3, *see also, Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 911 (N.D. Ill. 2015)("Given the existence of this [discovery] arrangement—which is not open to reasonable dispute—it was a binding agreement."); *Miller UK Ltd. v. Caterpillar, Inc.*, 2013 WL 474380, at *7 (N.D. Ill. 2013)(a party cannot renege on its discovery agreement); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 185 (N.D. Ill. 2006)(party must be held to its word to produce discovery)*; In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 341 (N.D.Ill.2005) (representation that there would be prompt compliance with discovery if motion to dismiss were denied was an enforceable promise). Anything less would be unethical: "[H]onesty and integrity are deemed important traits in the practice of law . . . ." *Hirschberg v. Commodity Futures Trading Comm'n*, 414 F.3d 679, 683 (7th Cir. 2005).

Counsel for BankDirect tells us that documents regarding these agencies are not responsive to Capital Premium's requests because they are BankDirect customers. We are told that BankDirect only discovered they were its customers when it performed a search of its records based on the list from Capital Premium. [Dkt. #227, at 12-14]. That's remarkable for two reasons. The first is the timing. Counsel for BankDirect had the list of agencies on November 14, 2017. Counsel did not provide the list to its client until some time after – counsel is not specific – January 26, 2018. [Dkt. #227, at 13]. At the very least, that's a two- and-a-half-month delay. And, if its lawyers' claims are to be credited, BankDirect apparently didn't manage to figure out it had customers on that list until almost another two months after that. While it's true that BankDirect was *hoping* for a stay of discovery – hope springs eternal is never a basis for inaction in defiance of promises to opposing counsel – discovery wasn't stayed in this case while BankDirect was *hoping*. And, by the time its motion was denied it had wasted more than two months and its responses were already long overdue. That's unacceptable.

The parties do not "own" the discovery schedule, as BankDirect seems to think; and thus suspending discovery on one's own according to its whims is improper. The parties do not "own" the discovery schedule, and cannot suspend or extend discovery in accordance with their own desires. *Flemming v. Herman Gutierrez & Ecolab, Inc.*, 2017 WL 1021993, at *2 (N.D. Ill. 2017)(citing *R-Boc Representatives, Inc. V. Minemyer*, 66 F.Supp. 3d 1124, 1130 (N.D.Ill. 2014) and other cases); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *8 (N.D. Ill. 2016). There is an overriding public interest in prompt resolution of legal disputes. *Gray v. Schaub*, 182 F.3d 921 (7th Cir. 1999); *Fort Howard Paper Co. v. Standard Havens*, Inc., 901 F.2d 1373, 1380 (7th Cir. 1990); *Flemming, supra*. There is not only a cost to the public at large, which is

subsidizing a dispute resolution service, but to the other litigants waiting in the queue for the court's attention. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015); *Fort Howard*, 901 F.2d at 1380; *R-Boc Representatives, Inc.*, 66 F. Supp. 3d at 1130. As discovery drags on and on in one case, it takes time away from other cases. BankDirect has been dodging Document Requests 8 and 9 for nearly a year. It was inappropriate, at best, for BankDirect to suspend discovery while filing and waiting for a ruling on a motion to stay.

The second is the fact that BankDirect didn't recognize at least some of its customers off the list immediately. Of course, counsel kept the list from BankDirect for over two months. But, still, for example, we are told that "HUB International is one of the largest insurance agencies in the nation and has been BankDirect's customer since BankDirect's inception in 2005." Surely, that important a customer would have been immediately apparent to BankDirect without a two month search from January 26th to March 21st. The list was only 52 agencies long. Of course it may well be that BankDirect, like its counsel, simply didn't take its discovery obligations terribly seriously and didn't perform any search until March 20th. *Cf. Houston v. C.G. §. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016)(four-month delay in perfoming records search deemed sanctionable bad faith).

Of course, based on the parties' joint submission, short of a mini-trial, we have no way of knowing whether these are BankDirect's customers or Capital Premium's customers or both. But, so what? There is nothing in BankDirect's portion of the joint submission to suggest that it is impossible for Capital Premium to have "had a relationship" with these purported BankDirect customers, and that is what the document requests are about: agencies that Capital Direct has or has had a relationship with. As for the agencies that BankDirect does not have a customer relationship with, that does not rule out the possibility that it had communications with them. And, again, as

Judge Lee said months ago, there is a protective order in place for occasions just like this one. Otherwise, what's the point of such orders? BankDirect cannot decide unilaterally it won't even search its records for those agencies, which is exactly what it says it decided to do.

Finally, BankDirect's protestations about proportionality under Fed.R.Civ.P. 26(b)(1) ring hollow. Proportionality, like other concepts, requires a common sense and experiential assessment. *See, e.g., Begay v. United States*, 2018 WL 557853, at *10 (D.N.M. 2018)("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'"). It is fanciful to suggest that a company like BankDirect does not know and cannot with relative ease ascertain who its customers are. And it is equally fanciful – quite apart from being untimely and in contravention of earlier, contrary assertions – to contend that a search for the subject communications, after the "incredible financial burden [of] written discovery" would outweigh any possible benefit. [Dkt. #227, at 16-17].

Of course, any legitimate claim of proportionality would have been apparent from the beginning and certainly before BankDirect's counsel had a list of customers/clients given them by their own client. It is important to recall that Capital Premium's counsel agreed to the pared down list without raising any concerns about proportionality – concerns that would and should have been raised had they been legitimate. They were not. The silence is deafening. *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008). *See generally* the discussion in *R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 684 (N.D. Ill. 2017). BankDirect's failure to speak up raises the troubling specter that BankDirect said "nothing in hopes that it might take advantage of the two chances at getting the result it sought…. Plaintiff sat on its rights, hoping to win in one of the

forums. Having lost on that gambit, only then did it complain. … *Lite On It Corp v. Toshiba Corp.*, 2009 WL 10673953, at *3–4 (C.D. Cal. 2009). BankDirect and its counsel, thus, have only themselves to blame for whatever burden they now (quite unpersuasively) feel is unfair.

Accordingly, BankDirect must produce the responses to Document Requests Nos. 8 and 9, as agreed, without qualification, within 7 days of this Opinion.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 8/3/18